REYES GONZALES v. THE STATE.

No. 19801. Delivered June 8, 1938.

The opinion states the case.

*F. G. Garza,* of Falfurrias, and *Kennedy Smith,* of Raymondville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confinement in the penitentiary for a period of ten years.

The indictment alleges that the appellant killed Eusebio Gonzalez by striking him with a piece of iron and cutting him with a knife.

McDougald, the city marshal of Raymondville, Texas, was notified by a railroad employee on Sunday morning, May 23, 1937, that a man's body was lying in a concrete hole just outside of the building at the feed mills north of the Farmers' Gin. The hole was some seven or eight feet deep and was tapered towards the bottom. The body was lying in about a foot of water. The justice of the peace was called and the body removed from the hole. The witness recognized the body as that of Eusebio Gonzalez, a transient who had visited the city annually for several years. The deceased was a man about 50 or 55 years of age, was about five feet and seven inches tall and weighed about 160 pounds. The witness had seen the deceased upon the streets of the city with his satchel and offering his wares for sale. Bloody tracks were followed to a one-room building about a block from the hole, in which were found some bloody clothes and shoes and also a piece of iron which was designated as an "emergency brake to an old car" with hair and blood on it. There was blood on the floor and blood stains on the walls. A small amount of money was found on the floor. There was a small satchel in the room containing trinkets, crosses, church souvenirs, etc. The wounds on the body of the deceased indicated that he had been beaten with a blunt instrument. The back of the head was beaten in and there was a gash on the side of the head which had the appearance of having been made with a bullet or a sharp dagger. The throat had been cut from ear to ear and the jugular vein was severed. There was a gash below the nipple which went through the heart. The piece of iron mentioned was about two feet long, about an inch thick one way and about three-quarters of an inch thick the other way. It weighed between two and three pounds. In the opinion of the witness, the instrument was capable of producing death.

Gomez, a constable, testified that he arrested the appellant and Oligario Galvan, his companion, about noon on Monday following the homicide, at which time they were walking down

the highway near San Jose, which was some eleven or fourteen miles from the Rio Grande River.

The sheriff of Willacy County went to the home of Jose Mc-Donald where the appellant was living; and after some conversation the witness and McDonald went into the brush about 150 yards from the house where they found a pair of blue pants and a pair of white shoes. The pants had been washed but blood stains were still visible on them below the knees. The shoes also had spots of blood on them.

Olivia Guerrerra saw the appellant and Oligario Galvan together on Saturday night. She saw them again about six o'clock Sunday morning, at which time Antonio Galvan was with them. When she saw Antonio that morning his clothes were full of blood. The witness testified on cross-examination that the deceased came to her house and sought a room for the night but that she was unable to accommodate him. He then borrowed a blanket from an aunt of the witness and went to the little house where he made a bed for himself.

Eloisa Gonzales, a sister of the appellant, testified that she lived about three miles from Raymondville; that about sunrise on Sunday morning, May 23, 1937, the appellant and Oligario Galvan ate breakfast at her house. She washed some clothes for Oligario and the appellant that morning which were in a tub of water. She washed only a pair of pants and a striped shirt which had been placed in the tub of water by some one. She testified that she did not know whether it was blood or water on the pants.

Jose McDonald, the stepfather of the appellant, testified that about six o'clock on the morning of May 23, 1937, the appellant and Oligario Galvan came to the house of the witness and said that they had had a fight. Appellant told the witness that he had killed a man. Appellant and Oligario ate breakfast at the home of the witness and then went to the brush where they stayed all day. The witness testified that the appellant owned a .22 calibre Winchester rifle in May, 1937, but what became of it he did not know.

Salinas, a first cousin of the appellant, testified that the appellant and Oligario Galvan came to his home about 11:30 o'clock on Saturday night. They asked him to fix some lunch for them, which he did. Thereafter they asked him to give them a "lift" in the car and indicated that they wanted to go toward the southwest. Appellant left his .22 calibre gun at the home of Salinas. Appellant told Salinas that night that he had killed a man.

Appellant testified that he was eighteen years of age; that

he was with Oligario Galvan in Raymondville, on May 23, 1937. They went to a dance that night and drank whisky wherever they could find any. They went to bed between two and three o'clock Sunday morning at the place where Oligario slept. An old man, who was in the house, opened the door for them upon their arrival. Appellant and Oligario slept in the same bed. During the night the appellant was awakened when Antonio Galvan was beating the old man and finally killed him. Appellant said he wanted to leave but Antonio threatened to kill him if he did not stay and assist in disposing of the body. Oligario, Antonio and the appellant carried the body to the railroad tracks and threw it into a hole. They returned to the house where the killing occurred. Antonio went inside but appellant and Oligario left and went to the house of the appellant's stepfather, where they ate breakfast. Appellant denied telling either his stepfather or his mother that he had killed a man. Appellant said he went to the home of Salinas and told him he wanted a "lift" down the road because Antonio had killed a man and he (appellant) was scared about it. Appellant told Salinas that he had assisted in throwing the body in a hole near the railroad tracks. He admitted that the pair of pants introduced in evidence belonged to him; that he wore them on the night or morning that Antonio killed the old man in the little shack. Appellant testified on cross-examination that he was asleep at the time the deceased was killed; that he did not know how and why Antonio killed the deceased; that he was just an innocent bystander to the killing.

No bills of exception have been presented complaining of the procedure followed upon the trial. The court instructed the jury upon the law of principals, and circumstantial evidence in a charge against which no objections were addressed.

We have perceived no reason for interfering with the verdict of the jury which is based upon sufficient evidence and had the sanction of the trial court.

The judgment is affirmed.